**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2995-WJM

DOSTON TURDIYEV,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden of the Denver Contract Detention Facility, *et al*.

      Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Doston Turdiyev's[1] Petition for Writ of Habeas

Corpus filed pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and "Motion for an

Order to Show Cause on an Expedited Basis and for an Order Restraining Transfer"

(the "Motion") (ECF No. 2).  Respondents Juan Baltazar, in his official capacity as

Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his

official capacity as Acting Director of U.S. Immigration and Customs Enforcement's

("ICE") Denver Field Office; David J. Venturella, in his official capacity as Acting Director

of ICE; Markwayne Mullin, in his official capacity as Secretary of the Department of

Homeland Security ("DHS"); DHS; Todd Blanche, in his official capacity as Acting

United States Attorney General; and the Executive Office for Immigration Review

---

[1] Petitioner notes that his surname appears as both "Turdiyev" and "Turdiev" and his first name appears as both "Doston" and, to a more limited extent, "Duston" in government records. (ECF No. 1 at n.1.)  These variations, he explains, are transliterations of the same name.  (*Id.*) The Court will refer to Petitioner as "Turdiyev" herein but, for the avoidance of doubt, Petitioner may be alternatively identified by his alien registration number: A 244-043-912.  (*Id.*)

("EOIR") (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 9.)  The Court did not order a reply.

For the following reasons, the Petition is granted, and the Motion is denied as moot.

## I.     BACKGROUND[2]

This case presents an all-too-familiar fact pattern.  Turdiyev is a native and citizen of Uzbekistan.  (ECF No. 1 at ¶ 11.)  On or about May 2, 2023, DHS paroled Turdiyev into the United States for urgent humanitarian reasons under 8 U.S.C. § 1182(d)(5)(A).  (*Id.* at ¶ 27.)  His Form I-94 indicates an authorized parole period through April 30, 2024.  (ECF No. 1-2 at 2.)  U.S. Citizenship and Immigration Services ("USCIS") also issued Turdiyev employment authorization which continued for the duration of his parole.  (ECF No. 1 at ¶ 31.)

After being granted parole, Turdiyev established residence in Brooklyn, New York.  (*Id.* at ¶ 30.)  He then submitted an application for asylum, in accordance with which USCIS issued him a second Employment Authorization Document valid from July 31, 2024 through July 30, 2029.  (*Id.* at ¶ 32.)  His asylum application remains pending. (*Id.* at ¶ 33.)

For more than two years, Turdiyev complied with all conditions of his release: he maintained a known residence, kept his employment authorization current, remained subject to the jurisdiction of the Immigration Court, and appeared for all required hearings.  (*Id.* at ¶ 34.)  He has no known criminal history.  (*Id.* at ¶ 35.)

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

Nevertheless, on or about May 10, 2026, ICE officers arrested Turdiyev at a truck stop in Oklahoma.  (*Id.* at ¶ 36.)  ICE then transferred him across state lines to the DCDF, where he has been continuously detained since his arrest.  (*Id.* at ¶ 37.)

Turdiyev submits that "Respondents have refused to afford him a bond hearing, asserting that he is an 'applicant for admission' subject to mandatory detention under 8 U.S.C. § 1225(b)."  (*Id.* at ¶ 3.)  In the Petition, Turdiyev challenges the legality of his detention under § 1225(b) and asks the Court to order his immediate release or, in the alternative, to order Respondents to provide him an individualized bond hearing within three days at which the Government bears the burden of justifying his continued detention.  (*Id.* at ¶ 5.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Turdiyev claims that his detention violates the Immigration and Nationality Act ("INA") (Count I), its implementing regulations (Count II), and his Fifth Amendment due process rights (Count III).  (*See generally* ECF No. 1.)  The Court agrees.

### A.    INA Violation

Turdiyev first claims that he is subject to detention only under § 1226(a), not § 1225(b), and that his "[p]arole expiration does not change this result."  (ECF No. 1 at ¶ 45.)  It is in some respects difficult for the Court to even determine where to begin its analysis of this claim, given the Government has offered no explanation as to whether it is presently detaining Turdiyev under § 1225(b)(1) or § 1225(b)(2)(A), nor has it clarified its position on the legal impact of the expiration of Turdiyev's grant of humanitarian parole under §1182(d)(5)(A).  (*See generally* ECF No. 9 (declining, "[f]or purposes of this specific case," to submit a briefing in opposition to the Petition).)

In any event, Turdiyev cites the decisions of several other courts in this District supporting that the expiration of a § 2241 petitioner's humanitarian parole under § 1182(d)(5)(A) lends no justification for that petitioner's re-detention under either provision of § 1225(b).  *See, e.g., Rafibaev v. Noem,* 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) ("Here, where petitioner has been released on parole pursuant to § 1182(d)(5)(A) for nearly two years, it is illogical to suggest that his re-detention is governed by § 1225(b)(1) . . . ."); *Abdyrakhmanov v. Baltazar,* 2026 WL 1800941, at *6 (D. Colo. June 23, 2026) (rejecting Respondents' contention that petitioner was subject to mandatory detention under § 1225(b)(2)(A) and instead concluding that the detention of someone "who is unlawfully present because his parole has expired . . . must be

dealt with in the same manner as any other noncitizen already present in the United States, i.e., under § 1226(a)) (citations and quotation marks omitted). This case presents materially the same facts as *Rafibaev* and *Abdyrakhmanov*, and the Government has given the Court no reason to diverge from the holdings of those decisions.

Thus, it likewise concludes that § 1226(a)—not § 1225(b)—applies to Turdiyev.

## B. Fifth Amendment Violation

Turdiyev also claims that Respondents have violated his Fifth Amendment due process rights by failing to provide "an individualized bond hearing before a neutral decisionmaker at which the government the government bears the burden of justifying [his] continued detention." (*See* ECF No. 1 at ¶ 59.)

Though it ultimately did "not determine . . . whether the Government's position is unconstitutional," the Court finds the Tenth Circuit's recent discussion of the doctrine of constitutional avoidance persuasive to the disposition of Turdiyev's Fifth Amendment claims in this case. *Santillan Quiroz v. Mullin,* ---- F. 4th ----, 2026 WL 1876709, at *17 (10th Cir. June 30, 2026). As further support for its resolution of the statutory interpretation question before it—*i.e.*, "whether § 1225(b)(2)(A) or § 1226(a) applies" to a § 2241 petitioner detained in the interior of the country—the Tenth Circuit considered the following:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person ... of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas* [*v. Davis*], 533 U.S. [678,] 690 [(2001)]. Due process requires that, whenever the Government detains

> somebody, it must have a good reason for doing so. *Id*. If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification." *Id.* Adopting the Government's interpretation of § 1225(b)(2)(A) would pose grave constitutional problems because there is little justification, let alone a strong one, for detaining every one of the millions of unadmitted noncitizens in our country.

*Id.* at *16.[3]

Turdiyev contends—and the Court agrees—that Respondents have circumvented their constitutional obligation to provide a "strong special justification" for his detention, (*id.*), such as "an individualized determination of danger or flight risk." (ECF No. 1 at ¶ 56.) Indeed, Respondents have provided *no* justification for Turdiyev's re-arrest and detention aside, seemingly, from their erroneous reliance on § 1225(b).[4] This strikes the Court as a particularly egregious failure in this case, where the Government already made an individualized assessment under § 1182(d)(5)(A) that Turdiyev could be released, and he "maintained work authorization, complied with his immigration proceedings, and accumulated no known criminal history" in the more than two years that followed. (*Id.* at ¶ 55.) By the same token, Respondents have failed to adhere to the prescribed regulatory and statutory procedures for demonstrating Turdiyev's detention is justified. *See also Garcia Abanil,* 817 F. Supp. 3d at 1158

---

[3] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process. In that regard, our discussion of constitutional avoidance sounds in substantive due process." *Id.* at *16 n.12. The Court makes the same assumption for the purposes of resolving the Petition.

[4] And, to the extent Respondents believe the 2008 order of removal justifies Turdiyev's detention under § 1231 or any other authority, they have waived that issue. *See McKissick v. Yuen,* 618 F.3d 1177, 1189 (10th Cir. 2010) (holding an intentional failure to develop arguments adequately in the district court results in waiver).

(concluding failure to provide individualized bond hearing prescribed by § 1226 necessarily violated petitioner's due process rights).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra,* 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of Turdiyev's substantive and procedural due process rights.

## C.    Remedy

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), or else release Petitioner." (ECF No. 9 at 1.) For two reasons, this Court no longer considers a bond hearing to be an adequate remedy to redress the violations discussed herein.

First, at least one other district court in this Circuit has persuasively written that, "since Petitioner's detention under § 1225(b)(2)(A) is void *ab initio,* immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the *status quo ante*." *Sosa,* 2026 WL 1453999, at *3. The *Sosa* court reasoned: "[H]ad Petitioner's initial detention accorded with due process, he would have been entitled to a bond hearing," but "a bond hearing cannot retrospectively cure a due process violation stemming from detention without the statutorily required exercise of discretion." *Id.* That is, "[u]nder INA regulations, a bond hearing occurs only *after* [ICE] has made its 'initial [discretionary] decision to detain'—it is not itself an initial custody determination but an act of '*re*-determination.'" *Id.* (quoting *Tumba v. Francis,* 813 F. Supp. 3d 394,

406 (S.D.N.Y. 2025)).  Thus, while immediate release cannot cure Turdiyev's roughly two-month long loss of liberty, it is the "remedy that comes the closest to doing so." *Sosa,* 2026 WL 1453999, at *3.

Second, this Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore."  *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever").  Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications."  *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Turdiyev's immediate release.[5]

---

[5] In *Santillan Quiroz,* the Tenth Circuit contemplated in a footnote that, on remand, the district court should "order the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him."  2026 WL 1876709, at *17 n.13.  In this Court's view, it is somewhat ambiguous whether this language means that the Tenth Circuit views release as contingent on the Government's failure to provide a bond hearing, or a bond hearing and release as equal, alternative remedies.  In the absence of clear guidance, this Court will continue to order immediate release in the first instance under appropriate circumstances, unless and until the Tenth Circuit holds otherwise.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 6) is MADE ABSOLUTE and Turdiyev's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Turdiyev pursuant to Counts I, II, and III of the Petition;

3.    The Motion (ECF No. 2) is DENIED AS MOOT;

4.    The parties' Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (ECF No. 10) is STRICKEN AS MOOT;

5.    **By no later than this Saturday, July 18, 2026,** Respondents shall IMMEDIATELY RELEASE Turdiyev on his own recognizance, along with all his personal belongings, and may not impose any conditions of release or supervision that were not imposed in the original grant of humanitarian parole**.  No additional conditions of release shall be imposed on Turdiyev by Respondents**. Respondents shall further facilitate Turdiyev's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

6.    Respondents are ENJOINED from re-arresting or re-detaining Turdiyev unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a).  At any such bond hearing, Respondents shall bear the burden of proof, and Turdiyev shall be allowed to have counsel present.  This injunction shall remain in effect

until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. During such periods of time as Turdiyev remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Turdiyev from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

8. Should Turdiyev believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **August 13, 2026**. Respondents shall file a response by no later than **September 3, 2026**, and Turdiyev shall file a reply by no later than **September 17, 2026**; and

9. Judgment shall enter in Turdiyev's favor and against Respondents on **July 30, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 16th day of July, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge